In the Matter of AMERICAN BIBLE SOCIETY, Respondent, v RICHARD LEWISOHN, as Finance Administrator of the City of New York, et al., Appellants, and ATTORNEY-GENERAL OF THE STATE OF NEW YORK, Intervenor-Respondent.

First Department, June 12, 1975

*Edith I. Spivack* of counsel *(Stanley Buchsbaum* and *Russell D. Scott* with her on the brief; *Adrian P. Burke, Corporation Counsel)*, for appellants.

*J. Frederic Taylor* of counsel *(Thomas C. Crane* with him on the brief; *Burke & Burke,* attorneys), for respondent.

*Sharon Cuff Slater* of counsel *(Samuel A. Hirshowitz, Julius Greenfield* and *Bernard Toomin* with her on the brief; *Louis J. Lefkowitz, Attorney-General)*, for intervenor-respondent.

TILZER, J. This appeal concerns the applicability and constitutionality of Local Law No. 46 of the Local Laws of 1971 of the City of New York and section 421 of the Real Property Tax Law (as amd by L 1971, ch 414, and L 1972, ch 529). The local law which was enacted pursuant to the authority granted by section 421 of the Real Property Tax Law seeks to restore to the city's tax rolls property of certain organizations which previously enjoyed tax-exempt status.

More specifically, section 421 of the Real Property Tax Law, while providing for the continued tax-exempt status of real property owned by a corporation or association organized or conducted exclusively for "religious, charitable, hospital, educational, moral or mental improvement of men, women * * * or for two or more such purposes", and while also providing for the exemption of real property owned by a corporation or association conducted exclusively for "bible, tract, benevolent, missionary * * * purposes * * * or for two or more such purposes" permits property owned by corporations or associations falling within the latter group of categories to be taxed by a municipal corporation within which it is located. By virtue of such authorization the City of New York enacted Local Law No. 46 of 1971, which makes taxable real property owned by a corporation or association "not organized or conducted exclusively for religious, charitable * * * [or] educational * * * purposes * * * but which is organized or conducted exclusively for * * * bible, tract, benevolent, [or] mis-

sionary * * * purposes * * * or for two or more such purposes".

Pursuant to the afore-mentioned statutes, the respondents restored to the tax rolls real property owned by petitioner, consisting of a 12-story building located at 1865 Broadway, New York.[1] The Supreme Court, however, considering the matter prior to the decision of the Court of Appeals in *Matter of Association of Bar of City of N. Y. v Lewisohn* (34 NY2d 143) concluded that petitioner's activities entitled it to exemption as an exclusively religious organization, even though it was simultaneously exclusively a bible society as well, and accordingly, annulled respondent's determination.

The subject statutes have already been considered by the Court of Appeals, albeit under a different factual context. Accordingly, in *Matter of Association of Bar of City of N. Y. v Lewisohn (supra)* the court held that as applied to the taxpayers therein involved, the statutes were not violative of either the due process or equal protection clause of the Federal or State Constitution.

The Court of Appeals stated as follows (p 156): "The State has great freedom in selecting the subjects of taxation and in granting exemptions and neither the due process clause nor the equal protection clause imposes any rigid limitations upon the State's power to devise reasonable tax policies."

Moreover, the Court of Appeals in that case, in considering the issue of whether the petitioners were engaged in activities or had purposes falling within the exempt or taxable categories, looked to the primary or principal purpose of those petitioners. Indeed, the court stated (p 153) that the word " 'exclusive', as used in the context of these exemption statutes, has been held to connote 'principal' or 'primary'. *(People ex rel. Untermyer v McGregor,* 295 NY 237, 243–244; *People ex rel. Watchtower Bible & Tract Soc. v Haring,* 8 NY2d 350, 354, 358, *supra; Crusade for Christ v Town of New Lebanon,* 36 AD2d 247, 250–251, affd 31 NY2d 765.)" Accordingly, although it was recognized that the petitioners therein engaged in activities having educational and charitable characteristics (exempt categories), nevertheless, since it was concluded that such purposes and characteristics were incidental

---

1. The petitioner occupies and uses 8½ floors of the subject building. The remaining 3½ floors are leased on a nonprofit basis to the Metropolitan Opera Guild, Inc., the Lincoln Center for the Performing Arts, Inc., and the Missionary Society of St. Paul the Apostle in the State of N.Y.

to the primary purpose which was a taxable category, it was held that the property was subject to taxation.

It therefore appears that the inquiry in these situations is whether the primary purpose is one which falls within the taxable categories, and not within the exempt categories. And, in this respect purposes or characteristics which are incidental or peripheral in nature to the main or primary purpose will neither defeat the exemption, nor on the other hand, will they qualify the taxpayer for exemption. (*Matter of Association of Bar of City of N.Y. v Lewisohn, supra,* p 153; *Matter of De Peyster,* 210 NY 216, 221; *Matter of Smith [Brooklyn Bar Assn.],* 266 App Div 1038, 1039, affd 292 NY 593; *Lower East Side Action v Town of Liberty,* 70 Misc 2d 562, 563.)

The Court of Appeals again considered the subject statutes in *Matter of Watchtower Bible & Tract Soc. v Lewisohn* (35 NY2d 92). In that case it was found that petitioner was organized and conducted exclusively for religious purposes within the meaning of the statute. The court noted (p 97) that for the taxing authority to succeed in establishing the taxable status of the real property involved, it "must prove not only that the corporate owner is organized exclusively for bible and tract purposes, but as well that it *is not* organized or conducted exclusively for religious purposes." It was found that there was a failure of proof with relation to the latter branch of the requirement.

Applying these guidelines to the matter *sub judice* we conclude that petitioner's property does not qualify for property tax exemption and accordingly, was properly restored to the tax rolls.[2] The stated purpose of the petitioner, as originally set forth in its 1841 charter, as well as in its present constitution, is "to promote the distribution of the Holy Scriptures without doctrinal note or comment and without profit."

---

2. It appears that petitioner was first accorded exemption from property taxes pursuant to the statute in effect in 1893. At that time exemptions were provided for "real property of a corporation or association organized exclusively for the moral and mental improvement of men or women or for religious, charitable, missionary * * * [or] educational purposes" (L 1893, ch 498). Initially, the petitioner's application for exemption was denied. However, after suit was brought, petitioner was found to be entitled to the property tax exemption. (*People ex rel. American Bible Soc. v Commissioners of Taxes and Assessments,* 76 Hun 491, affd 142 NY 348.) Nevertheless, it does not appear that there was any question presented with relation to petitioner's status as a religious corporation, educational corporation, or one organized for the moral and mental improvement of men or women, the only issue litigated being the effective date of the exemption created by statute.

It is further provided in petitioner's constitution that it "shall offer its services, so far as possible, to all engaged in the distribution of the Scriptures." In carrying out such purposes, the petitioner distributes many millions of bibles throughout the world, at or below cost, and donates to those who cannot afford to pay. It translates bibles into numerous foreign languages, and although it is not affiliated with any particular religion or denomination, it receives financial support from various Christian denominations. Petitioner points to the contribution its translation programs have made to the field of education as well as the promotion of literacy throughout the world.

The activities of the petitioner, without doubt, confer a distinct benefit upon the public. However, the question before this court is not whether such activities are beneficial to society but simply whether they fall within the categories rendering it subject to taxation, and not within the categories which are tax exempt. We find that the record clearly establishes that petitioner is not organized exclusively "for religious, charitable * * * educational, moral or mental improvement * * * purposes, but * * * is organized * * * exclusively for bible, tract [or] missionary * * * purposes" and accordingly, that respondents have satisfied their burden of proof. The primary or main purpose of the petitioner is the dissemination or distribution of bibles, and as such, it comes within the category of a bible society. And, while it must be recognized that the purposes of a bible society have religious overtones and effect, nevertheless, the distinctions in this area of the law, between the broad category of religious purpose, and the related auxiliary purposes of tract, bible, and missionary have appeared in prior statutes and have been judicially recognized. Accordingly, those benefits which are derived incidentally as a result of petitioner's primary activity, whether they be characterized as the promotion of religion, as the promotion of moral or mental improvement, or as educational, cannot serve to cast petitioner into the exempt category. (Matter of Association of Bar of City of N. Y. v Lewisohn, 34 NY2d 143, 153–154, supra.)

Petitioner, however, argues that if it is found that its purposes are such that it is considered subject to taxation, then the statutes as applied to it are violative of section 1 of article XVI of the New York State Constitution and constitute

a denial of due process and of the equal protection of the laws under the Federal and State Constitutions.

First, we note, that even to the extent that petitioner's activities are religious within the meaning of the constitutional guarantee of freedom of religion, such, nevertheless, does not mean that petitioner's property is therefore immune from taxation. *(Follett v McCormick,* 321 US 573, 577–578; *Murdock v Pennsylvania,* 319 US 105, 112.) Nor do we believe that the subject legislation is violative in any manner of section 1 of article XVI of the New York State Constitution which provides: "Exemption from taxation may be granted only by general laws. Exemptions may be altered or repealed except those exempting real or personal property used exclusively for religious, educational or charitable purposes as defined by law and owned by any corporation or association organized or conducted exclusively for one or more of such purposes and not operating for profit."

Such article of the Constitution only guarantees exemption from taxation for property used exclusively for the stated purposes, as defined by law. Section 421 of the Real Property Tax Law, therefore, was properly enacted to set forth such definitions. (Cf. *Board of Educ. v Town of Greenburgh,* 277 NY 193.) Moreover, the constitutional provision which was enacted in 1938, was presumably adopted and must be interpreted to have reference to the then existing law which treated bible, tract and missionary societies as not being included within "religious, educational and charitable" purposes. (See L 1896, ch 908; *Matter of Watson,* 171 NY 256.)

Finally, we find no merit to the argument that the statute is violative of the due process clause or a denial of the equal protection of the laws. In this respect it is argued that the classifications adopted by the Legislature, in subjecting certain organizations to taxation and exempting others, are vague and arbitrary. Specifically, it is urged that the legislation would "tax some organizations and yet not tax other organizations having purposes and activities so similar as to defy rational differentiation. So read, it would tax bible, tract and missionary societies but not religious, educational or charitable organizations." However, as indicated earlier, "[t]he State has great freedom in selecting the subjects of taxation and in granting exemptions and neither the due process clause nor the equal protection clause imposes any rigid limitations upon the State's power to devise reasonable tax policies." *(Matter of*

*Association of Bar of City of N. Y. v Lewisohn,* 34 NY2d 143, 156, *supra*; see *Lehnhausen v Lake Shore Auto Parts Co.,* 410 US 356; *Shapiro v City of New York,* 32 NY2d 96, app dsmd 414 US 804.) The equal protection clause with respect to taxation is satisfied if the classification has reasonable basis, or to put it another way, is not " 'based on fictions or on arbitrary or unreasonable assumptions of fact' or unless they indicate 'hostile or oppressive discrimination' " *(Roosevelt Raceway v County of Nassau,* 18 NY2d 30, 39, app dsmd 385 US 453). The legislation herein has not been shown to be arbitrary in any manner nor do we believe that it is too vague or lacking in clarity. Indeed, the statute was based on thorough studies which indicated that because of the continuous erosion of municipal tax bases, certain activities should no longer be exempt from their burden of taxation, but should instead contribute to the costs of government. And, while pursuant to section 1 of article XVI of the State Constitution the Legislature was required to continue exemptions for "religious, educational or charitable purposes as defined by law", it was within its province to subject other categories to taxation, albeit those activities confer a public benefit. Moreover, the legislative determination to exempt additional categories not mandated by the New York State Constitution, i.e., moral and mental improvement, hospital and cemetery, while excluding such categories as bible, tract, missionary, scientific, bar associations, etc., cannot be said to be unreasonable. Indeed, the different classifications contained in the subject legislation are not new and their distinct characteristics have been recognized in prior tax legislation (see e.g. L 1893, ch 498; L 1896, ch 908 [Tax Law, § 4]), as well as by the cases *(Matter of Watson,* 171 NY 256, *supra,* distinguishing religious corporations from missionary societies; *Matter of Francis,* 121 App Div 129, affd 189 NY 554, distinguishing between library purposes as compared to educational purposes; *Matter of DePeyster,* 210 NY 216, *supra,* upholding the distinction between historical purposes as compared to educational purposes). We thus conclude that section 421 of the Real Property Tax Law and Local Law No. 46 of the Laws of 1971 are constitutional as applied to the petitioner, and accordingly, the tax upon its property at 1865 Broadway was lawfully imposed.

Accordingly, the judgment entered December 26, 1973, should be reversed on the law, and the petition dismissed, without costs and disbursements.

LYNCH, J. (dissenting). I dissent and would affirm. The burden of proof established in *Matter of Watchtower Bible & Tract Soc. v Lewisohn* (35 NY2d 92), that the taxing authority must not only prove that the corporate owner is organized primarily for bible purposes but also that it is not organized primarily for religious purposes, recognizes that religious purposes and bible society purposes are not necessarily mutually exclusive. I can agree with the majority that a primary purpose of the petitioner is the nonprofit distribution of bibles. I can agree that this comes within the category of a bible society. But I cannot agree that this forces a conclusion that the petitioner's promotion of religion therefore becomes merely an incident of this distribution. It is the reason for the distribution and hence becomes itself a primary purpose. I would hold that the petitioner's primary purpose is the promotion of religion effectuated through the nonprofit distribution of bibles.

STEVENS, P. J., and MARKEWICH, J., concur with TILZER, J.; KUPFERMAN and LYNCH, JJ., dissent in an opinion by LYNCH, J.

Judgment, Supreme Court, New York County, entered on December 26, 1973, reversed, on the law, and vacated and the petition dismissed, without costs and without disbursements.